# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Staff Sergeant LAWRENCE D. WILLIAMS JR.
### United States Air Force

## ACM 38677

## 7 March 2016

Sentence adjudged 4 June 2014 by GCM convened at Barksdale Air Force Base, Louisiana. Military Judge: Donald R. Eller Jr.

Approved Sentence: Bad-conduct discharge, confinement for 12 months, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for Appellant: Major Isaac C. Kennen and Philip D. Cave (civilian).

Appellate Counsel for the United States: Captain Tyler B. Musselman and Gerald R. Bruce, Esquire.

Before

ALLRED, TELLER, and ZIMMERMAN
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

TELLER, Senior Judge:

Appellant was convicted, contrary to his pleas, by a military judge sitting alone of indecent exposure, possession of child pornography, and obstruction of justice in violation of Articles 120c and 134, UCMJ, 10 U.S.C. §§ 920c, 934. The court sentenced him to a bad-conduct discharge, 12 months of confinement, total forfeitures, and reduction to E-1. The sentence was approved, as adjudged, on 19 September 2014.

Appellant argues that: (1) the military judge erred by admitting evidence discovered pursuant to an invalid search authorization; (2) the evidence of obstruction of justice is factually and legally insufficient; (3) the evidence of possession of child pornography is factually and legally insufficient, and specifically, the images do not constitute child pornography; (4) the specifications of the additional charge constitute unreasonable multiplication of charges for findings and sentence; (5) his sentence to a punitive discharge was too severe; and (6) Article 120c(c), UCMJ, is unconstitutional.[1] Finding no error that materially prejudices a substantial right of Appellant, we affirm the findings and sentence.

*Background*

Appellant first came under suspicion on Thursday 11 July 2013 when he was apprehended for indecent exposure. Using a closed-circuit video system, employees at an off-base department store observed Appellant briefly, yet intentionally, expose his penis while standing behind another store patron. A copy of the video was admitted in evidence at trial. The store employees called the local police department, who came to the store office, reviewed the video, and apprehended Appellant outside in the parking lot. A civilian detective later interviewed Appellant. During that interview, Appellant admitted that he had been inspired to expose himself by a video he had seen online. Appellant also lamented the impact the incident would have on his military career, saying, "[F]ifteen years gone, down the tubes." The detective testified that he received a call within a few hours from military personnel requesting transfer of jurisdiction over the case, to which he agreed. Appellant was released to his assistant first sergeant the next day and immediately taken to the mental health clinic. He received a referral for inpatient treatment at a civilian facility. The treatment was scheduled to begin the next Monday.

In order to facilitate Appellant's admission for inpatient treatment, his assistant first sergeant and section chief met Appellant downtown so that they could transport him to the civilian facility. After meeting Appellant, they followed him to his on-base residence so that Appellant could pack a bag for his stay. When they arrived, Appellant pulled his car into the garage and left the garage door open. The two senior noncommissioned officers observed Appellant urgently disposing of what appeared to be demolished pieces of computer equipment into a trash bin. Becoming concerned about Appellant's frantic behavior, the two went to the open door of the home and asked if they could come in. Appellant agreed. Upon entering the house, the noncommissioned officers saw more evidence of damaged equipment. The assistant first sergeant "noticed on top of [Appellant's] stove [Appellant] had what looked like a pile of CDs or DVDs, about a four-inch stack sitting in a tinfoil bowl, that had been melted." He also saw two removable digital memory cards, one in the bathroom and one in the kitchen. The assistant first sergeant refocused Appellant on packing a bag for his stay at the treatment

---

[1] Issues three through six are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

facility, and they soon left. After transporting Appellant to the civilian facility, the assistant first sergeant called security forces to report what he had seen. He also advised them that Appellant had taken the bin out to the street for collection.

After receiving the call about the demolished computer equipment, security forces went to Appellant's home. They went through the trash container and recovered most of the damaged equipment which included a demolished laptop computer and some destroyed hard drives. Security forces consulted with the local detachment of the Air Force Office of Special Investigations (AFOSI). AFOSI examined the materials, but advised security forces that they could not recover any of the data from the damaged equipment. AFOSI agents, believing the material to be of no evidentiary value, returned the materials to the containers they had been transported in and placed them in a trash can in their office. Security forces personnel, who still had the indecent exposure case to resolve, returned to AFOSI and recovered the materials.

At that point, security forces investigators reviewed the state of their evidence. One investigator noticed that the metal platters associated with the hard drives were missing and sent two patrol officers to recover them. After consulting with the legal office, they also decided to seek a search authorization from the installation's military magistrate for any additional computer media in the home. An investigator began compiling an affidavit to support the request, including a list of potential storage devices. The affidavit sought authority to search Appellant's home and car in order to seize and conduct follow up searches of the listed types of computer-related materials which were "related to or used to: prove that [Appellant] was in possession of pornographic material similar to the type described to Bossier City Police Detectives and any evidence [Appellant] attempted and/or was successful in destroying evidence of same." Investigators, along with a representative of the base legal office, met with the military magistrate on 17 July 2013. The military magistrate authorized the search as requested.

*Search Authorization*

We review a military judge's denial of a suppression motion under an abuse of discretion standard and "consider the evidence 'in the light most favorable to the' prevailing party." *United States v. Rodriguez*, 60 M.J. 239, 246–47 (C.A.A.F. 2004) (quoting *United States v. Reister*, 44 M.J. 409, 413 (C.A.A.F. 1996)). We will find an abuse of discretion if the military judge's "findings of fact are clearly erroneous or his conclusions of law are incorrect." *Id*. at 246 (quoting *United States v. Ayalo*, 43 M.J. 296, 298 (C.A.A.F. 1995)) (internal quotation marks omitted).

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. "A military judge's decision to find probable cause existed to support a search authorization as well as to admit or exclude evidence is reviewed for an abuse of discretion." *United States v. Cowgill*, 68 M.J. 388, 390 (C.A.A.F. 2010). "[D]etermination of probable cause by a neutral and detached

magistrate is entitled to substantial deference." *United States v. Maxwell*, 45 M.J. 406, 423 (C.A.A.F. 1996) (quoting *United States v. Oloyede*, 982 F.2d 133, 138 (4th Cir. 1993)) (internal quotation marks omitted).  The military judge would not have abused his discretion when denying the motion to suppress if the magistrate had a "substantial basis" for determining that probable cause existed.  *United States v. Leedy*, 65 M.J. 208, 213 (C.A.A.F. 2007) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Probable cause exists when there is sufficient information to provide the authorizing official "a reasonable belief that the person, property, or evidence sought is located in the place or on the person to be searched."  Mil. R. Evid. 315(f)(2).  Authorization to search may be granted by an "impartial individual," who may be a commander, military magistrate, or military judge, in accordance with the underlying constitutional requirement that a search authorization be issued by a "neutral and detached" magistrate.  Mil. R. Evid 315(d); *United States v. Maxwell*, 45 M.J. 406, 423 (C.A.A.F. 1996).  "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Neither party has asserted that the military judge's findings of fact pertaining to the search authorization are clearly erroneous or unsupported by the evidence.  Our review finds them to be well supported, and we adopt them.

First, Appellant contends that there was not a substantial basis for the search authorization in this case.  Appellant's argument centers on the absence of facts that show that the specific video referenced by Appellant in his interview with the Bossier City detective would be found on any of the materials listed in the authorization.  Appellant argues that the video was "neither contraband nor evidence of a crime" and that its existence was "merely incidental" to the essential facts of his admissions.  We are not persuaded.  In light of Appellant's admissions that he formed the intent to expose himself after watching the video, we conclude that the presence of the video, if discovered, would be at least circumstantial evidence that he exposed himself deliberately and not by accident.

While the video described would have been relevant evidence to corroborate Appellant's admissions, the Government was not restricted solely to seeking evidence directly confirming the admission in its request for the authorization to search Appellant's home.  In fact, the record shows that neither the Government nor the military magistrate adopted that restrictive view.  The purpose the investigator stated in the supporting affidavit itself was to "prove that [Appellant] was in possession of pornographic material *similar to the type* described to Bossier City Police Detectives and any evidence [Appellant] attempted and/or was successful in destroying evidence of

same." (Emphasis added). Appellant's intent at the time he exposed himself was clearly an issue in the investigation. Appellant admitted that he was inspired to expose himself by watching a video showing such behavior. Evidence of that specific video would corroborate his admission and provide evidence of his intent. However, even without that specific video, other visual depictions of individuals engaging in similar indecent exposure would also be circumstantial evidence of his intent. Appellant's admission of being motivated to expose himself by watching a video of such conduct over the Internet constituted a logical link between his offense and digitally stored visual depictions of similar conduct. The assistant first sergeant's observation of removable digital memory cards in Appellant's home provided a logical link between such depictions and the location to be searched. Taken together, we find that there was a substantial basis for the military magistrate to conclude that visual depictions of individuals engaged in indecent exposure would be found in Appellant's home, and that such depictions were evidence of Appellant's intent at the time of his offense.

Appellant also asserts that the evidence of obstruction of justice was insufficient to support the search of electronic media. Since we have concluded that there was a substantial basis to grant the authorization to locate evidence of Appellant's intent in exposing himself, we need not reach that aspect of Appellant's argument.

Next, Appellant argues that the search authorization was overbroad. Specifically, Appellant alleges that the "search was conducted without any apparent nexus between the content of the media and the probable cause" which had justified the authorization in the first place. An authorization to search media meets constitutional specificity requirements as long as the material described is "related to the information constituting probable cause." *United States v. Allen*, 53 M.J. 402, 408 (C.A.A.F. 2000). Appellant suggests that the search should have been confined to locations and files, such as the Internet history logs, that would likely have contained evidence that Appellant accessed the specific video referred to in his interview with the Bossier City detective. This aspect of Appellant's argument is also based on the faulty premise that the evidence which the Government sought was limited to the specific video described in Appellant's admissions. As discussed above, we find no basis for such a limitation, nor does it appear from the record that the investigators or magistrate adopted that view.

Applying the abuse of discretion standard of review and giving appropriate deference to the determination of the military magistrate, we uphold the military judge's ruling on the validity of the search authorization.

Even if we found the authorization defective, we concur with the military judge's finding that the evidence would have been admissible under the good faith exception to the exclusionary rule. In *United States v. Leon*, the Supreme Court established an exception to the exclusionary rule in cases where the official executing the warrant relied on the magistrate's probable cause determination and the technical sufficiency of the

warrant, and that reliance was objectively reasonable. 468 U.S. 897, 922 (1984). Appellant argues that it "was not objectively reasonable for the searchers to rely on that authorization to conduct a search that extended beyond merely seeking to confirm Appellant's access to the 'x-video' website." As discussed above, we are not convinced by Appellant's suggestion that the scope of the permissible search was limited solely to the video he described in his admission. The prosecution was required to prove that Appellant's indecent exposure was intentional. Any videos or other visual depictions showing such behavior, in addition to the video Appellant specifically mentioned, would constitute circumstantial evidence of that intent. We find that it was objectively reasonable for investigators to rely on an authorization to search in the locations specified in the authorization to discover any such additional evidence relevant to Appellant's intent, as well as evidence that he did in fact access the specific video he described.

### *Factual and Legal Sufficiency of the Obstruction of Justice Charge*

Appellant argues that the evidence of obstruction of justice was legally and factually insufficient. In accordance with Article 66(c), UCMJ, 10 U.S.C. § 866(c), we review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)) (internal quotation marks omitted). In resolving questions of legal sufficiency, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325, *quoted in United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington,* 57 M.J. at 399.

The term reasonable doubt does not mean that the evidence must be free from conflict. *United States v. Lips,* 22 M.J. 679, 684 (A.F.C.M.R. 1986). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The offense of obstruction of justice, as charged in this case, has four elements: that Appellant damaged (in the case of Additional Charge, Specification 1) or discarded

(in the case of Additional Charge, Specification 2) electronic media devices; that he did so in his own case having reason to believe there were or would be criminal proceedings pending; that the damage was done with the intent to impede the due administration of justice; and that, under the circumstances, his conduct was to the prejudice of good order and discipline in the armed forces and of a nature to bring discredit upon the armed forces. *Manual for Courts-Martial, United States* (*MCM*), pt. IV, ¶ 96.b. (2012 ed.).

Appellant first argues that the criminal proceedings protected by the offense of obstruction of justice under Article 134, UCMJ, are limited to courts-martial or nonjudicial punishments under Article 15, UCMJ, 10 U.S.C. § 815, and should not apply to any civilian investigation or prosecution. The Army Court of Criminal Appeals addressed the applicability of obstruction of justice under Article 134, UCMJ, to efforts to subvert a civilian investigation in *United States v. Jenkins*, 48 M.J. 594 (Army Ct. Crim. App. 1998). Private First Class Jenkins had engaged in sustained abuse of his wife, including sexual assault. After one such assault, Jenkins' wife reported the abuse to his company commander, but the subsequent investigation was handled by Colorado Springs police. *Id.* at 596. In a verbal statement to a Colorado Springs investigator, Jenkins denied assaulting his wife and said the sex was consensual. *Id.* The court found that "[e]ven though [the] appellant was being interrogated by a civilian police officer, the allegations were first reported to military authorities and [the] appellant must have known that at least a possible disposition of the allegations would occur within the administration of military justice." *Id.* at 601; *see also United States v. Smith*, 34 M.J. 319, 324 (C.M.A. 1992) (finding that the impact of charged misconduct "on a later, but nonetheless probable, military investigation" brought it within the intended scope of Article 134, UCMJ, where military authorities were already aware of the underlying situation at the time of the alleged obstruction activity), *rev'd on other grounds*, 39 M.J. 448 (C.M.A. 1994). Courts have also upheld obstruction of justice charges for interference with a foreign investigation, although they have typically relied on the service discrediting aspect of the conduct. *See United States v. Ashby*, 68 M.J. 108, 118–19 (C.A.A.F. 2009) (discussing obstruction of justice in the context of Article 133, UCMJ, 10 U.S.C. § 933); *United States v. Bailey*, 28 M.J. 1004, 1006–07 (A.C.M.R. 1989).

In this case, Appellant manifested a belief that military authorities would be notified of his misconduct when he lamented "fifteen years gone, down the tubes." His belief was further reinforced when he was released to the custody of his assistant first sergeant. Whether or not he was subjectively aware that the investigation had been handed off to military authorities, he certainly had reason to believe that such an investigation was likely. *See United States v. Barner*, 56 M.J. 131, 136 (C.A.A.F. 2001).

Proof of intent to impede the due administration of justice requires conduct beyond a mere effort by the accused to avoid detection. *United States v. Lennette*, 41 M.J. 488, 490 (C.A.A.F. 1995). The destruction of contraband can constitute obstruction

of justice when it has been seized by law enforcement, and in some circumstances prior to seizure if the subject believes seizure is likely. *Id.* Appellant asserts that he had no reason to suspect that either the civilian police or military authorities were seeking a search authorization or investigating additional offenses. We find that assertion contrary to the evidence. An AFOSI agent testified that his review of the Internet history on the laptop recovered from Appellant's residence indicated that the user searched for information on how to destroy a hard drive. There was also substantial physical evidence supporting an inference that the computer equipment and media recovered from the home was not just disposed of, but deliberately damaged in such a way as to make recovery of any files more difficult, if not impossible. We can find no reasonable explanation for such evidence other than the inference that Appellant did in fact believe it was likely that law enforcement would seek to examine the media, and he deliberately sought to prevent that examination from yielding any information. Although the intent to impede the investigation may have been motivated in substantial part by Appellant's desire to avoid detection of any child pornography, we do not find his motive to be determinative. Whatever his motive, there is convincing circumstantial evidence that he anticipated an investigation in which the military was already involved and that he intentionally damaged and disposed of electronic media to impede that investigation.

We find that the evidence, when viewed in the light most favorable to the prosecution, was sufficient to allow a reasonable factfinder to have found all the essential elements of obstruction of justice beyond a reasonable doubt. We ourselves, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, are also convinced of Appellant's guilt beyond a reasonable doubt.

*Factual and Legal Sufficiency of the Possession of Child Pornography Charge*

Appellant also contends, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), that the evidence was factually and legally insufficient to support his conviction for possession of child pornography. The scope of review and legal standard for this assignment of error is the same as set out above concerning the obstruction of justice conviction.

We find that the evidence was both legally and factually sufficient to sustain the conviction. The military judge entered special findings establishing guilt as to two specific items detailed in the report compiled by the Defense Computer Forensics Laboratory expert. Together, the items were comprised of three images. All three images depicted a known victim who was a minor at the time the picture was taken. All three images depict either a lascivious exhibition of genitalia or a sexual act. Appellant personally asserts that the images do not constitute child pornography, citing *United States v. Blouin*, 74 M.J. 247 (C.A.A.F. 2015). We have considered the court's holding in *Blouin*, but find it inapplicable to the images at issue in this case. The images were

stored in easily accessible portions of removable media discovered in Appellant's home. We conclude that a reasonable factfinder could have found all the essential elements beyond a reasonable doubt, and we ourselves, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, are convinced of Appellant's guilt beyond a reasonable doubt.

*Unreasonable Multiplication of Charges*

Appellant next argues, pursuant to *Grostefon*, that the military judge erred by finding that specifications of the Additional Charge did not constitute an unreasonable multiplication of charges for findings.[2] "A military judge's decision to deny relief for unreasonable multiplication of charges is reviewed for an abuse of discretion." *United States v. Campbell*, 71 M.J. 19, 22 (C.A.A.F. 2012). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion." *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000). "[O]n a mixed question of law and fact . . . a military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995).

Even where charges are not multiplicious in the sense of due process, "the prohibition against unreasonable multiplication of charges has long provided courts-martial and reviewing authorities with a traditional legal standard—reasonableness—to address the consequences of an abuse of prosecutorial discretion in the context of the unique aspects of the military justice system." *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001). Rule for Courts-Marital (R.C.M.) 307(c)(4) is the current regulatory expression of that prohibition, directing "[w]hat is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person."

Our superior court has articulated four factors a trial court must evaluate in ruling on such motion:[3]

> (1) whether each charge and specification is aimed at distinctly separate criminal acts,
>
> (2) whether the number of charges and specifications misrepresent or exaggerate the accused's criminality,

---

[2] The military judge granted the defense motion to the extent it requested consolidation of the two specifications for sentencing.

[3] The four factors articulated in *United States v. Campbell*, 71 M.J. 19 (C.A.A.F. 2012), are directly derived from the factors appellate courts apply under *United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2001). As the court noted in *Campbell*, "The first factor adopted in *Quiroz*, whether the accused objected, is an important consideration for appellate consideration. 55 M.J. at 338. However, it is omitted here because a military judge will invariably be addressing the issue in the context of an objection." *Campbell*, 71 M.J. at 24 n10. We find no legally significant difference between references to *Quiroz* or *Campbell* factors at the trial level.

(3) whether the number of charges and specifications unreasonably increase the accused's punitive exposure, or

(4) whether there is any evidence of prosecutorial overreaching or abuse in the drafting of the charges.

*Campbell*, 71 M.J. at 24.

The military judge made specific findings as to each of the *Campbell* factors. He concluded that damaging the electronic media was a distinct criminal act from discarding that media. He held that, because potential members could determine whether Appellant committed either offense independent of the other, the specifications did not misrepresent or exaggerate the accused's criminality. With regard to the findings phase, the military judge noted that the court retained the ability to address the third element by merging the specifications for sentencing, which he later did. He also found no evidence of prosecutorial overreach or abuse. Each of these findings was adequately supported by the record and the military judge applied the appropriate legal standard. We hold that the military judge did not abuse his discretion in declining to merge the specifications of the Additional Charge for findings.

*Sentence Severity*

Appellant also argues, pursuant to *Grostefon*, that his sentence was too severe. We review sentence appropriateness de novo, employing "a sweeping congressional mandate" to ensure "a fair and just punishment for every accused." *United States v. Baier*, 60 M.J. 382, 384–85 (C.A.A.F. 2005) (quoting *United States v. Bauerbach*, 55 M.J. 501, 504 (Army Ct. Crim App. 2001)) (internal quotation marks omitted). The appropriateness of a sentence generally should be determined without reference or comparison to sentences in other cases. *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985).

Appellant does not assert any specific basis for his claim but avers generally that the approved sentence "does not do justice." We have given individualized consideration to this particular appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial. We find the sentence was appropriate in this case and was not inappropriately severe.

*Constitutionality of Article 120c.(c)*

Appellant also asserts, pursuant to *Grostefon*, that Article 120c.(c) is unconstitutional. We review the constitutionality of a statute de novo. *United States v. Disney*, 62 M.J. 46, 48 (C.A.A.F. 2005). Although Appellant did not specify the basis for his claim on appeal, his motion for relief at trial argued that the statue was void for

vagueness in violation of the Fifth Amendment[4] and overbroad in violation of the First Amendment.[5] We construe his claim on appeal in that context.

The Due Process Clause of the Fifth Amendment "requires 'fair notice' that an act is forbidden and subject to criminal sanction" before a person can be prosecuted for committing that act. *United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003) (quoting *United States v. Bivins*, 49 M.J. 328, 330 (C.A.A.F. 1998)). Due process "also requires fair notice as to the standard applicable to the forbidden conduct." *Id.* (citing *Parker v. Levy*, 417 U.S. 733, 755 (1974)). In other words, "[v]oid for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *Parker*, 417 U.S. at 757 (citing *United States v. Harriss*, 347 U.S. 612, 617 (1954)). In short, a void for vagueness challenge requires inquiry into whether a reasonable person in Appellant's position would have known that the conduct at issue was criminal.

In addition, due process requires that criminal statutes be defined "in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). This "more important aspect of the vagueness doctrine" requires that the statute "establish minimal guidelines to govern law enforcement" rather than "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Id.* at 358 (quoting *Smith v. Goguen*, 415 U.S. 566, 574–75 (1974)) (internal quotation marks omitted) (alterations in original).

The relevant provision of Article 120c.(c), UCMJ, makes it a crime to "intentionally expose[], in an indecent manner, the genitalia, anus, buttocks, or female areola or nipple." As the Supreme Court has observed, we do not evaluate the statute in the abstract. *MCM,* pt. IV, ¶ 45c.a.(c). "In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged." *Parker*, 417 U.S. at 757 (quoting *United States v. National Dairy Corp.*, 372 U.S. 29, 32–33 (1963)). In this case, the Appellant is charged with publically exposing his penis in a department store while standing directly behind a woman who had no part in his conduct. While under other facts the statute may leave some ambiguity as to the limits of indecency, "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Id.* at 759 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973)) (internal quotation marks omitted). We find Appellant's argument that Article 120c.(c), UCMJ, is void for vagueness unconvincing.

We similarly find unconvincing Appellant's assertion that Article 120c.(c), UCMJ, is overbroad in light of interests protected by the First Amendment. "In any case, even if

---

[4] U.S. CONST. amend. V.
[5] U.S. CONST. amend. I.

[Appellant's] conduct were subject to the heightened standard of review applicable to First Amendment claims in civilian society, the armed forces may prohibit service-discrediting conduct under Article 134 so long as there is a reasonable basis for the military regulation of Appellant's conduct." *United States v. Rollins*, 61 M.J. 338, 345 (C.A.A.F. 2005). We find that there is a reasonable basis for the armed forces to regulate indecent exposure in the circumstances at issue here due to the reasonable probability other customers would have observed Appellant's conduct, the alarm such conduct would have engendered, and the discredit such indecent conduct would have brought upon the Air Force had it been observed.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED.**

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court